## REEVES, PARVIN & CO.'S APPEAL.

A receiver, who has managed the partnership property carelessly and negligently, will not be allowed commissions or credit for counsel fees, and the costs of audit will be imposed on him.

Appeal from Common Pleas of Delaware County. In Equity. No. 316 January Term, 1880.

George L. McCay and William M. Black were in partnership at Linwood Station, on the P., W. & B. Railroad, in Delaware County. In December, 1874, McCay filed a bill in equity for dissolution of the partnership, which was afterwards decreed. John B. McCay, the father of complainant, was appointed receiver of the partnership affairs. He filed an account which was excepted to and referred to an auditor; and protracted litigation was the result. The Court finally directed that the receiver be allowed commissions and credit for counsel fees and charged the partnership estate with the costs of audit. Reeves, Parvin & Co., who were creditors of the firm of Black & McCay, then appealed to the Supreme Court, complaining of the allowance of commissions, counsel fees and costs to the receiver.

*N. B. Thompson, N. H. Todd* and *W. B. Broomall, Esqs.*, for appellants, cited Berryhill's Appeal, 35 Pa., 245; Parker's Estate, 64 Pa., 307; Stehman's Appeal, 5 Pa., 413; Sterrett's Appeal, 2 P. & W., 427; Norris' Appeal, 71 Pa., 126; Price's Estate, 81 Pa., 272; Clauser's Estate, 84 Pa., 51; Goble's Appeal, 36 Pa., 397; Wistar's Appeal, 54 Pa., 67; Smith's Appeal, 47 Pa., 427.

*John V. Rice, Esq., contra.*

The Supreme Court reversed the decree of the Common Pleas on May 2nd, 1881, in the following opinion, per

STERRETT, J.:

After deducting Prothonotary's costs, the net balance distributed among the creditors, by the decree of Court, was $4,608.77, which makes a dividend of 68.686 per centum of their respective claims. In making up that balance the following items were credited to the receiver, viz.:

| | |
|---|---:|
| Costs of auditing receiver's accounts | $ 492 40 |
| Receiver's counsel fees for services during audit | 50 00 |
| Receiver's commissions, etc. | 500 00 |
| Loss on inventory | 2,253 78 |
| Amounting in all to | $3,296 18 |

The fund for distribution was thus diminished to that extent, and the contention of appellants is that neither of these credits should have been allowed.

The learned master refused to credit the receiver with any loss on inventory, for the reason that he is *prima facie* chargeable with the appraised value of the property as contained in the inventory, and has failed to produce evidence sufficient to entitle him to a discharge as to any portion thereof; and at first the Court was of the same opinion; but, on further consideration, came to the conclusion there was sufficient proof of loss to justify the credit claimed by him, and it was accordingly allowed. While the finding of facts upon which the final opinion of the learned judge is based is not entirely satisfactory, we are not so fully convinced that there was such error as calls for a reversal of the decree. His conclusion was right if the facts from which it was drawn were correctly found, and we cannot say they were not.

The testimony disclosed no sufficient reason for taxing the fund with the costs of a protracted and expensive audit, rendered necessary by the manner in which the receiver conducted the business and the form in which he presented his account. The master correctly found that in transacting the business with which he was entrusted the receiver was neither prudent, economical nor successful. He undertook to continue the business of the firm, opened the store, employed a number of clerks, bookkeepers and helpers, bought and sold merchandise for cash and on credit, and generally acted as a manager employed for the purpose of carrying on the business, rather than as a receiver appointed to take possession of the effects and convert them into money as speedily as possible. He purchased, without authority, merchandise to the amount of $3,595.87, mingled the same with the goods of the firm, and failed to keep any separate account of either.

The so-called account filed by the receiver failed entirely to furnish such information as the parties in interest had an undoubted right to demand. It was a mere balance sheet, the debit side of which consisted of three items, viz.: Merchandise, cash on hand and in bank, and accounts due the firm of

Black & McCay, aggregating $13,512.86. The credit side was composed of six items, viz.:

| | |
|---|---:|
| Loss on inventory | $ 2,211 77 |
| Bad debts due Black & McCay | 4,348 00 |
| Expenses during the year | 2,363 35 |
| Commissions five per cent. on $13,512.86 | 675 65 |
| Counsel fees | 250 00 |
| Cash balance | 3,664 09 |
| Total | $13,512 86 |

This was the character of the account presented to the members of the firm and their creditors for inspection and information. Instead of furnishing the latter, it was well calculated to challenge investigation. It appeared at a glance that loss on the appraised value of the stock, expenses, counsel fees and commissions, amounted to nearly as much as the balance on hand for distribution. The result was a protracted investigation, in which the creditors sought to obtain that information which should have been furnished by the receiver's account. They were so far successful as to increase the cash balance nearly $1,000, and it is not by any means clear that it should not have been increased at least twice as much more. It was undoubtedly the duty of the receiver to have rendered a full and intelligent account of his stewardship, and his failure to do so, coupled with his bad management of the business, has doubtless been the occasion of expensive litigation, and perhaps pecuniary loss, to which the parties in interest should not have been subjected. We are therefore clearly of opinion that the receiver should bear all the expenses of the audits, amounting to $492.40. For the same reasons he is not entitled to credit for $50 paid to his counsel for professional services in his behalf before the auditor, nor, in view of the careless and negligent manner in which the duties of his appointment were discharged, should he be allowed any commissions. As was said by Mr. Justice Bell, in Stehman's Appeal, 5 Barr, 413, "compensation to trustees is allowed in this and our sister States as a reward for faithful execution of the trust confided to them. Integrity, industry, intelligence and enlightened activity in the trustee are the

qualities which command reward. To compensate sloth, ignorance, reckless confusion and procrastinating delay, by which the interests of the *cestui que trust* are impaired instead of being promoted, would be to prevent the very object our system has in view, in allowing compensation to trustees, by offering a premium to incapacity or dishonesty." We do not mean to intimate that any wrong was intended by the receiver in this case, but, in view of the facts found by the master, we think the expenses of the audit should be borne by him, and the credits for counsel fees and commissions should be disallowed. This results in surcharging $1,042.40, and dividing the same *pro rata* among the creditors, to whom a dividend has already been awarded. The decree must therefore be reversed as to said three items, and affirmed as to the residue.

And now May 2, 1881, it is adjudged and decreed that so much of the decree of the Court of Common Pleas as charges the costs of audit, $492.40, on the fund, and allows the appellee, John B. McCay, credit for commissions, $500, and counsel fees, $50, amounting in all to $1,042 40, be reversed and set aside, and that the residue of said decree be affirmed. And it is further adjudged and decreed that the said John B. McCay, receiver, etc., be surcharged with the said sum of $1,042.40, and that the same be divided *pro rata* among the creditors to whom a dividend has been awarded, and be paid to them respectively in addition to said dividend, and the costs of this appeal be paid by appellee, John B. McCay.